24-5085-JGD<br>24-5086-JGD

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANTS

I, Brandon Barber, Special Agent, U.S. Drug Enforcement Administration ("DEA"), being sworn, state:

### INTRODUCTION AND AGENT BACKGROUND

1. I have been a Special Agent with the DEA since 2013, and I am currently assigned to the Boston Office of the DEA's New England Division. Previously, I was assigned to the DEA New York Division for approximately 10 years. I investigate possible violations of federal law, including federal drug trafficking and money laundering statutes. I have not included every aspect of my training, education, and experience and have highlighted those areas most relevant to this application.

2. During my employment with DEA, I have participated in various aspects of drug-related investigations. I have conducted numerous investigations into local, domestic and international drug trafficking organizations, money laundering organizations, and weapons trafficking organizations. As part of these investigations, I have participated in and been the affiant for drug-related search warrants, as well as warrants dealing with laundering of drug proceeds and the trafficking of illegal firearms. I have participated in controlled purchases of narcotics and illegal firearms utilizing confidential sources and undercover law enforcement agents and officers. I have also conducted and coordinated electronic and physical surveillance of individuals involved in the illegal distribution of controlled substances and the laundering of drug proceeds. I have debriefed individuals about their drug-trafficking and money laundering knowledge, information, and activities. I have served and executed search warrants and conducted arrests for violations of federal narcotics, weapons, and money laundering laws, and have participated in the seizure of large amounts of narcotics, narcotics proceeds, and illegal weapons, as

well as the seizure of bank accounts and other financial instruments used to launder drug proceeds.

3. Based on my training and experience, I am familiar with the manner and means commonly employed by drug traffickers, weapons traffickers, and money launderers, including those employed to avoid detection by law enforcement. I am familiar with the manner in which drug traffickers often store drugs, weapons, and drug proceeds in storage sites commonly referred to as "stash houses," as well as various methods used to conceal and transport these items. I am also familiar with the terminology, slang, and coded language commonly employed by these individuals. I am aware of the prices commonly charged for various illegal narcotics and illegal weapons, the method of packaging, and the jargon used in their trade. I have received specialized training regarding the activities of narcotics traffickers, including the methods used to package, store, and distribute narcotics, and the methods used by narcotics traffickers to conceal and launder the proceeds of their narcotics trafficking activities. Similarly, I am familiar with investigations regarding closely associated illegal activities commonly engaged in by drug trafficking organizations, especially the laundering of drug proceeds.

4. Based on my training and experience, I am aware that drug traffickers commonly use cellular telephones to communicate and further their drug-trafficking activities. However, drug traffickers are often aware of law enforcement's use of electronic surveillance and frequently endeavor to thwart detection by changing cellular telephone numbers, using multiple cellular phones at the same time, using a variety of third party communication applications on said phones, utilizing straw purchasers and fictitious addresses for the subscriber information for the phones, and/or utilizing prepaid cellular phones where the user of the phone is not required to provide personal identifying information. I am also aware that drug traffickers frequently discard ("drop") or change cellular telephone numbers and cellular telephones in an effort to thwart law

enforcement's use of electronic surveillance.

5. I am familiar with the manner in which narcotics traffickers use coded, veiled, or slang-filled telephone conversations when discussing their illegal business, in an effort to further prevent detection, and that they often use text messages in lieu of phone calls to avoid speaking over the telephone. I am familiar with the "street" language used by drug traffickers, as well as the methods they use to disguise conversation and operations.

6. Additionally, because cellular telephones are often a primary means by which drug dealers communicate with their suppliers and customers, I am aware that drug traffickers typically keep their cellular telephones with them. I am aware that obtaining precise location information and cell site information that reflects the movement of cellular telephones being used by an individual engaged in drug trafficking can prove beneficial to law enforcement, because it will allow us to locate and conduct surveillance of the individual, and identify locations that the individual frequents, such as residences, possible stash houses, locations of drug sales and locations of meetings with co-conspirators.

## PURPOSE OF THE AFFIDAVIT

7. I submit this affidavit in support of an application for search warrants under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) authorizing the collection of both historical and prospective location information regarding the following: A mobile phone assigned call number (978) 331-7123, accessed through International Mobile Subscriber Identity ("IMSI") 310260035343718 (the "Target Phone"). The subscriber of the Target Phone is unknown. The user of the Target Phone is a Hispanic male known only as "Edwin."

8. The service provider for the Target Phone is T-Mobile Corporation ("T- Mobile"), a wireless telephone service provider that accepts service of process at 4 Sylvan Way, Parsippany,

New Jersey.  The Target Phone is further described in Attachment A.   The requested historical cell site data is described in further detail below and in Attachment B.   The requested precise location information (including E-911 Phase II data, prospective cell site data, and communication detail records) is described in further detail below and in Attachment C.

9. Based on the facts set forth in this affidavit, there is probable cause to believe that the user of the Target Phone has committed, is committing, and will continue to commit criminal offenses in violation of 21 U.S.C. §§ 841(a)(1) and 846 (distribution of controlled substances and conspiracy to distribute controlled substances),  and 21 U.S.C. § 843(b) (use of a communications facility in the commission of controlled substances trafficking offenses) (the "Subject Offenses").

10. As described below, there is also probable cause to believe that (a) the Target Phone has been used, is being used, and will continue to be used to facilitate the commission of the Subject Offenses, and (b) the historical cell-site data and precise-location information described in Attachments B and C will either constitute, or lead to, evidence of the Subject Offenses, as well as the identification and location of individuals engaged in the commission of the Subject Offenses. As described below, historical cell-site and precise location information for the Target Phone will assist investigators with locating and positively identifying the user of the Target Phone, conducting physical surveillance, identifying locations used to store drugs and drug proceeds, and potentially seizing contraband such as drugs, illegal weapons, and\or drug proceeds.

11. The facts in this affidavit come from my personal observations as well as information obtained from other agents and witnesses.  My interpretations of conversations, conduct, and events detailed herein are based on my training and experience and knowledge of the investigation.   This affidavit is intended to show that there is probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

24-5085-JGD
24-5086-JGD

## PROBABLE CAUSE

12. In or about September of 2023, and subsequently in in October of 2023, a source of information ("SOI")[1] provided information to members of the DEA New England Field Division that a drug trafficking organization (DTO) was using passenger vehicles to transport multiple kilogram quantities of fentanyl and cocaine from New York and New Jersey to stash houses operated by members of the DTO in Boston.

13. Specifically, the SOI stated that the DTO operated stash houses in the Roxbury, Dorchester, and Jamaica Plain neighborhoods of Boston. The SOI stated that DTO members used these stash houses to distribute fentanyl and cocaine to various customers in the greater Boston area. The SOI further stated that the DTO distributed smaller, retail amounts of fentanyl and cocaine, and also sold multiple kilogram amounts of fentanyl and cocaine to various customers and retail dealers.

14. In or about February of 2024, the SOI provided information that a Hispanic male by the name of "Alsiquendi," a/k/a "Edwin," had kilogram quantities of narcotics available in Boston and used the following phone number: (978) 331-7123, that is, the Target Phone. The SOI stated that this person was potentially looking for new customers in the Boston area.

15. During the week of February 19, 2024, the SOI introduced a confidential source (the "CS")[2] to the holder of the Target Phone. That same week, at the direction of law

---

[1] This SOI is providing information to the DEA to obtain immigration consideration. I believe that the information provided by the SOI is reliable to the extent that it has been corroborated herein. I am unaware of any criminal history in the United States.

[2] This CS is providing information to the DEA for financial consideration. This CS has provided information in numerous federal investigations since the early 2000s. These investigations have led to many significant seizures of narcotics and narcotics proceeds, as well as multiple successful prosecutions and convictions for violations of federal drug laws. Information provided by the CS is believed to be reliable. I am aware that the CS was arrested for possession with intent to

enforcement, the CS made a recorded call to the Target Phone and spoke with a Hispanic male who used the name "Edwin."

16. During this call, Edwin indicated that he could provide kilogram quantities of cocaine and heroin to the CS in Boston. Edwin and the CS used coded language such as "white" and "brown" to refer to the narcotics. Based on my training and experience I know that "white" is a common code word for cocaine, and "brown" is term commonly used for heroin and fentanyl.

17. The CS and Edwin discussed the purchase of multiple kilograms of fentanyl and cocaine. The CS stated that they did not want to buy partial amounts but wanted to buy the full amount, meaning the CS did not want to buy partial kilograms or smaller quantities but wanted to purchase entire kilograms of cocaine and fentanyl. Edwin stated that he could provide multiple kilogram quantities of both fentanyl and cocaine to the CS.

18. Also in the initial call, the CS discussed obtaining a sample of the fentanyl and a sample of the cocaine before purchasing larger amounts from Edwin. Based on my training and experience, I know that it is common for drug traffickers to buy a small amount, or a sample, of narcotics, to test the quality of the drugs before buying a larger amount. This is especially common when a trafficker is dealing with a new supplier from whom the trafficker has not purchased before. Edwin stated that he understood that the CS wanted to test the quality before buying the kilograms and that he could provide a sample of the cocaine and fentanyl within a few days. Edwin stated that he would be in touch with the CS regarding prices for the cocaine and fentanyl.

19. In a subsequent recorded call during the week of February 19, 2024, Edwin told the CS that he (Edwin) was on the way to meet with the person holding the fentanyl and cocaine, that he (Edwin) would get prices for the CS, and that he (Edwin) would facilitate the sale of a

---

distribute cocaine. I am unaware of any other criminal charges.

sample of cocaine and fentanyl to the CS during the following week.  The CS and Edwin agreed to arrange for a sample once Edwin provided prices for the fentanyl and cocaine.

20.     Based on the foregoing, I believe that Edwin is using the Target Phone to facilitate the distribution of fentanyl and cocaine.

**APPLICABLE CELLULAR TELEPHONE TECHNOLOGY**

21.     I know that mobile phone providers have technical capabilities that allow them to collect and generate information about the locations of the mobile phones to which they provide service.  Some of this information includes but is not limited to: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records, and (3) Call Detail Records (CDRs).

22.     E-911 Phase II data provides relatively precise location information about the mobile phone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

23.     Cell-site data identifies the "cell towers" (*i.e.*, antenna towers covering specific geographic areas) that received a radio signal from the mobile telephone and, in some cases, the "sector" (*i.e.*, faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise than E-911 Phase II data.

24.     Based on my training and experience, I know that T-Mobile can collect cell-site data about the Target Phone.  I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.  CDRs

are a type of these records and they contain data regarding telecommunication transactions without providing the content of that transaction. In part, the data contained in these CDRs includes cell site information utilized during the transaction.

25. Based on my training and experience, I know that T-MOBILE also collects data about the speed with which signals travel between cellular telephones and cellular towers ("per call measurement data," or "PCMD"). For each cellular telephone accessing its network, providers such as T-MOBILE use PCMD and other data to calculate and record the estimated location of that cellular telephone.

## AUTHORIZATION REQUEST

26. I request that the Court issue the proposed search warrants pursuant to 18 U.S.C. § 2703(c) and Fed. R. Crim. P. 41.[3]

27. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B and Attachment C unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Phone on T-Mobile's network, and at such intervals and times as directed by the government. The government will compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

28. I further request that the Court direct T-Mobile to disclose to the government any information described in Section 1 of Attachment B that is within its possession, custody, or

---

[3] 18 U.S.C. 2703(c) authorizes a "court of competent jurisdiction" to issue a search warrant for the kinds of records that this application seeks. A "court of competent jurisdiction" includes a district court ("including a magistrate judge") that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

control.

29.     I further request that, pursuant to the preclusion of notice provisions of 18 U.S.C. §§ 2703(b)(1)(A) & 2705(b), the Court order T-Mobile not to notify any person (including the subscriber or customer to whom the materials relates) of the existence of this application, the warrants, or the execution of the warrants, for the earlier of one year from the date of the Court's Order or upon notice by the government within 30 days of the conclusion of its investigation, unless the Court extends such period under 18 U.S.C. § 2705(b) T-Mobile may disclose this Order to an attorney for T-Mobile for the purpose of receiving legal advice.  Non-disclosure is appropriate in this case because the Court's Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the existence of the investigation.  There is accordingly reason to believe that notification of the existence of the Order will seriously jeopardize the investigation including by giving targets an opportunity to destroy evidence, change patterns of behavior, intimidate potential witnesses, or flee from prosecution.   See 18 U.S.C. § 2705(b).

30.     I further request that the Court authorize execution of the warrants at any time of the day or night.  Reasonable cause exists for receipt of precise location information (Attachment C) at any time of day or night, owing to the potential need to locate the Target Phone outside of daytime hours.  Because the historical cell-site records will be compiled by T-Mobile at a time convenient to T-Mobile, reasonable cause exists to permit the execution of that portion of the warrants at any time in the day or night as well.

31.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrants, be sealed until further order of the Court, except that the government may produce them in criminal discovery and provide the search warrants to T-

24-5085-JGD<br>
24-5086-JGD

MOBILE.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

*Brandon Barber*
Brandon Barber
Special Agent
Drug Enforcement Administration

Sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on February 27, 2024.

*Judith Gail Dein*
HON. JUDITH GAIL DEIN
United States Magistrate Judge

# ATTACHMENT A

1. Information about the cellular telephone assigned call number (978) 331-7123, International Mobile Equipment Identity 310260035343718, with no listed subscriber (the "Target Phone"), whose service provider is T-Mobile USA, Inc. ("T-Mobile"), a company that accepts process at 4 Sylvan Way, Parsippany, NJ 07054.

2. Records and information associated with the Target Phone that is within the possession, custody, or control of T-Mobile.

## ATTACHMENT B

**I. Information to be Disclosed by T-Mobile**

To the extent that the information described in Attachment A is within the possession, custody, or control of T-Mobile, including any information that has been deleted but is still available to T-Mobile or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), T-Mobile is required to disclose to the government the following information pertaining to the Target Phone listed in Attachment A for the time period **June 1, 2023, through the date of this Order**:

    a. The following information about the customers or subscribers of the Target Phone:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        iv. Length of service (including start date) and types of service utilized;

        v. Other subscriber numbers or identities (All Internet Protocol (IP) address, email address, email logs (without content such as the body of the email or subject lines), website address, servers, usernames, WiFi hotspot locations, Wi-Fi ID history, and IP history location, including user identifying information and communications to and from the Target Phone; and

    b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Phone, including:

        i. the date and time of the communication, the method of the communication, and the source and destination of the communication;

        ii. Call detail records to include numbers dialed, incoming numbers, call

2

durations, signaling and communications processing information, geographic locations of towers and sectors activated, sent and received by the Target Phone, for any form of communication it is capable of including: voice, VoIP, VoLTE, text, SMS, MMS, internet, mobile-to-mobile, any push to talk feature, non-billed calls, uncharged call detail, airtime usage data, Automated Message Accounting records and data bases, calls-to-destination data and packet data, as available without communications content and excluding post-cut-through dialed digits);

iii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent;

iv. Cell site data, including any data reflecting: the cell towers and sectors thereof utilized in routing any phone, text, or data communication to or from the Target Phone; the approximate range of the Target Phone from the cell towers during the communication (including per-call measurement "PCM", round-trip time "RTT" data, Historical Mobile Locators "NELOS", Timing Advanced Information, and Timing Advance Report Date ("True Call").

**II. Information to be Disclosed by T-Mobile**

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. § 846 (conspiracy to commit narcotics trafficking offenses), 21 U.S.C. § 841(a)(1) (distribution of controlled substances), and 21 U.S.C. § 843(b) (use of a communications facility in the commission of controlled substances trafficking offenses) (the "Subject Offenses"), during the period of June 1, 2023, through the date of this Order.

**This warrant does not authorize the collection of any content of any communications.**

4

## ATTACHMENT C

All information about the location of the Target Phone described in Attachment A for a period of thirty days, during all times of day and night, including:

1) Precise location information including:

    a) E-911 Phase II data;

    b) GPS data;

    c) Latitude-longitude data;

    d) Cell site data, including any data reflecting: the cell towers and sectors thereof utilized in routing any phone, text, or data communication to or from the Target Phone; the approximate range of the Target Phone from the cell towers during the communication (including per-call measurement "PCM", round-trip time "RTT" data, Historical Mobile Locators "NELOS", and Timing Advance Report Date "True Call");

    e) Other precision location-based measurements of the Target Phone.

2) Call Detail Records "CDR's" including;

    a. Cellular sites and associated street address to include numbers dialed, incoming numbers, call durations, signaling and communications processing information, geographic locations of towers and sectors activated, sent and received by the Target Phone for any form of communication it is capable of including: voice, VoIP, VoLTE, text, SMS, MMS, internet, mobile-to-mobile, any push to talk feature, non-billed calls, uncharged call detail, airtime usage data, Automated Message Accounting records and data bases, calls-to-destination data and packet

5

   data, as available without communications content and excluding post-cut-through dialed digits;

3) Radio Signal Strength Indicators (RSSI) for the period of this Warrant, timing advance and other pertinent information delivered in real time with regard to neighboring towers as feasible;

4) The MAC address of the Target Phone to include:

   a) Wi-Fi MAC address of the Target Phone and/or the access point(s) to which the Target Phone connects to the internet via wireless technology that allows computers and other devices to communicate over a wireless signal (commonly referred to as Wi-Fi), and packet data; and

5) All Internet Protocol (IP) address, email address, email logs (without content such as the body of the email or subject lines), website address, servers, user names, WiFi hotspot locations, Wi-Fi ID history, and IP history location, including user identifying information and communications to and from the Target Phone.

**This warrant does not authorize the collection of any content of any communications.**

   T-Mobile (hereinafter "the service provider") must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information about the location of the Target Phone unobtrusively and with a minimum of interference with service provider services, including by initiating a signal to determine the location of the Target Phone on the service provider's network, and at such intervals and times directed by the government. The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of Information about the location of the Target Phone. *See* 18 U.S.C. § 3103a(b)(2).

The service provider shall not disclose the existence of the search warrant to the listed subscriber or to any other person for a period of one year from the date of this Order, or upon notice by the government within 30 days of the conclusion of its investigation, whichever is earlier, unless the Court extends such period under 18 U.S.C. § 2705(b). *See* 18 U.S.C. § 2705(b). The service provider may disclose this Order to an attorney for the service provider for the purpose of receiving legal advice.